AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
BRADY MURPHY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADY MURPHY<br><br>     Plaintiff,<br><br>     v.<br><br><br>UNMANTA BHAIRAV LLC dba TIPSY YETI RESTAURANT & BAR<br><br><br>     Defendant. | CASE NO. 4:26-cv-2665<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>3. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff BRADY MURPHY complains of Defendant UNMANTA BHAIRAV LLC dba TIPSY YETI RESTAURANT & BAR, and alleges as follows:

1.      **INTRODUCTION:**  On February 13, 2026, Plaintiff attempted to go out for lunch at the Tipsy Yeti Restaurant & Bar located at 2512 San Pablo Ave, Berkeley, CA 94702. During his visit, Defendant denied Plaintiff Brady Murphy equal access to and enjoyment of the Tipsy Yeti Restaurant & Bar because he is a disabled individual who uses a service dog to assist him with certain tasks related to his disability.  Further, Defendant's employees treated Plaintiff with disrespect and humiliated him due to the presence of his service dog.  Defendant also offered

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

qualitatively different and worse services to him than they give to other non-disabled patrons. This included but was not limited to harassing him about providing documentation and paperwork to prove his dog is a service dog, embarrassing Plaintiff, and when Plaintiff declined to show any "paperwork" for his service dog and informed Defendant that he was not legally required to show the documentation for his service dog, Defendant's employees would only seat him on the patio (where no other customers were sitting and where it was cold).  Plaintiff told Defendant that he did not want to sit outside on the patio, but Defendant informed Plaintiff that the patio was his only choice of seating while he was accompanied by his service dog. This segregation was unnecessary and anything but "equal" treatment under the law.

2.     Plaintiff left the Tipsy Yeti without being seated or served at the restaurant due to Defendant's noncompliant service dog policy and poor employee training.  Defendant discriminated against Plaintiff because he is a disabled individual who uses a service dog to ameliorate his disability. The interaction left Plaintiff emotionally drained and upset.  He does not want to experience the same treatment the next time he visits, so he is deterred from returning to the Tipsy Yeti until Defendant adopts an ADA compliant service dog policy and necessary training.

3.     The Defendant's decision to require an ID for service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.
- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

> **Q17. Does the ADA require that service animals be certified as service animals?**
>
> A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.
>
> **There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

4.      Plaintiff had heard good things about the food at the Tipsy Yet, and despite his poor treatment there, he would still like to sample the cuisine. Plaintiff intends to return to the restaurant in the future but cannot do so until the policies of the restaurant are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. He has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate him for refusing him equal access to service at the restaurant because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Tipsy Yeti.

5.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

6.      **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

7.    **INTRADISTRICT:**  This case should be assigned to the Oakland intradistrict because the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

8.    **PARTIES:**  Plaintiff Brady Murphy is a "qualified" disabled person who uses the assistance of a service dog to alert him of the onset of seizures.  He suffers from epilepsy which causes Plaintiff to have grand mal seizures. Despite mitigation of his seizures with several medications, Plaintiff still experiences one to two breakthrough seizures a month, and in times of stress the frequency of his seizures can increase significantly.  Plaintiff relies on his service dog, a giant schnauzer named "Regis" to assist him with certain tasks related to his disability including alerting him of the onset of a seizure, leading Plaintiff to a safe place to have the seizure or alerting him to lie down on the ground and positioning himself to cushion Plaintiff if he falls. Regis was professionally trained by several different trainers with significant assistance from Plaintiff. Plaintiff and Regis have been working together for over five years.  Plaintiff and Regis reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

9.    Defendant UNMANTA BHAIRAV LLC dba TIPSY YETI RESTAURANT & BAR is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 2512 San Pablo Ave, Berkeley, CA 94702, known the Tipsy Yeti.

10.    The Tipsy Yeti is a place of "public accommodation" and a "business establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

11.    **FACTUAL STATEMENT:** Plaintiff Brady Murphy has been working with his service dog Regis for over five years. Regis is a six-year-old giant schnauzer who was trained to be a service dog since birth. Regis was both professionally trained by several trainers and

4

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

individually trained by Plaintiff to be a service dog.  Plaintiff has also continued to train Regis to serve his specific needs throughout their relationship.  Regis is specifically trained to assist Plaintiff with certain tasks including alerting Plaintiff prior to the onset of a seizure, leading Plaintiff to a safe place or alerting him to lie down prior to a seizure, and cushioning Plaintiff's fall if he collapses from a seizure.

12.     Regis is a working dog; he is not a pet.  Plaintiff and Regis have trained extensively together, and they supplement that training daily.  Plaintiff takes Regis almost everywhere with him in public.  It is important they stay together as much as possible because (a) Regis provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Regis goes.

13.     Plaintiff enjoys dining at different restaurants throughout the Bay Area. He particularly enjoys dining at restaurants with unusual cuisine near his home. On February 13, 2026, Plaintiff went to the Tipsy Yeti for lunch. The restaurant is located less than a ten-minute drive from Plaintiff's home. He had heard from several people that the restaurant served excellent food. Additionally, the location holds personal significance to him because it is across the street from a building his father previously owned, making the area nostalgic from his childhood.

14.     Plaintiff went to the Tipsy Yeti intending to have lunch, which would have been his first meal of the day, and he was extremely hungry at the time. Plaintiff parked his vehicle directly in front of the restaurant and entered the establishment with his service dog, Regis.

15.     Plaintiff is a 6'4" African American man who is readily noticeable when entering a public space, particularly when accompanied by his service dog Regis, who is a beautiful Giant Schnauzer. As Plaintiff entered the restaurant with Regis, he was aware that patrons often turn their attention toward him in such settings.

16.     As Plaintiff entered the Tipsy Yeti he saw that the facility had both a restaurant dining area and a bar area. Initially, Plaintiff and Regis were not acknowledged by staff when they entered the restaurant. Slightly confused, Plaintiff asked an employee whether he had entered through the correct door, and the employee confirmed that he had.

5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

17.     The employee then asked Plaintiff whether he wanted to sit outside on the patio. Plaintiff responded that he did not want to sit outside and that he would like to sit inside the restaurant.  It was too cold that day for Plaintiff liking for an outdoor meal.

18.     After Plaintiff stated that he wished to sit inside, the employee told Plaintiff that pets were not allowed inside the restaurant. Plaintiff responded that Regis is a service dog, not a pet, so he is allowed to accompany him anywhere in the restaurant that the general public is allowed. The employee then unlawfully asked Plaintiff to provide documentation proving that Regis is a service dog. Plaintiff explained that federal law does not require individuals with disabilities to provide documentation for their service animals and that it is not lawful to require such documentation as a condition of entry or service.

19.     Plaintiff also informed the employee that he does possess identification relating to Regis but did not wish to provide it because the identification discloses Plaintiff's disability and related personal medical information.

20.     The employee reiterated that the Tipsy Yeti management required documentation for service animals to be allowed to sit inside and indicated that Plaintiff would not be seated indoors unless he produced such identification.

21.     During this interaction, another staff member, who on information and belief was either the owner or manager, approached Plaintiff and the employee and asked whether everything was alright. Plaintiff explained that he wanted to be seated inside to get food but that the employee would not allow him to be seated inside unless he provided paperwork for service dog. Defendant's manager/owner confirmed the employee's statements. He told Plaintiff he would have to provide identification/paperwork for his service dog in order to dine inside the Tipsy Yeti.

22.     Plaintiff observed that there were numerous patrons seated inside the restaurant at the time—approximately fifteen to twenty individuals—but that there were also plenty of empty tables available in the dining area. Several patrons appeared to overhear the interaction between Plaintiff and the employees and began staring, which caused Plaintiff embarrassment, unwanted attention, and distress.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

23.     Plaintiff did not want to disclose documentation identifying his disability in front of restaurant staff and patrons and did not want to be relegated to the outdoor patio area. Plaintiff did not want to sit outside for several reasons. It was cold outside, there were no patrons seated on the patio area at the time, and Plaintiff was concerned about his safety because he has a seizure-related condition. Plaintiff believed that sitting outside in an isolated area would increase the likelihood that he could be injured if he experienced a seizure. No one would know he needed help.

24.     As a result of Defendant's policy and the employees' refusal to seat Plaintiff inside without providing documentation for his service dog, Plaintiff was effectively denied full and equal access to the restaurant's indoor dining area.

25.     Plaintiff ultimately left the establishment because he did not want to sit outside on the patio and did not want to disclose private disability-related documentation in order to obtain service. Plaintiff returned to his car feeling defeated and went home to find something else to eat for lunch.

26.     At no time during Plaintiff's interaction with Defendant did any employee ask the two questions permitted under federal law for service animals—namely, whether the dog is required because of a disability and what work or task the dog has been trained to perform. Nor did any employee conduct an individualized assessment of Regis. Regis remained calm, under control, and non-disruptive during the entire interaction. Regis did not bark, lunge, or otherwise behave in a manner that would justify exclusion.

27.     There was no legitimate basis to exclude Plaintiff and Regis from the indoor dining area of the Tipsy Yeti. Defendant's employees did not perform any individualized assessment of the service animal and instead enforced a policy requiring documentation for service animals, which is inconsistent with the ADA and its implementing regulations.

28.     Plaintiff has a desire to return to the Tipsy Yeti because he has heard the food is excellent. However, Plaintiff will refrain from going back to the restaurant because his previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws.  It is also clear that Defendant's employees have not

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

received training about how to interact with disabled patrons who rely on service dogs for assistance.

29. Plaintiff wishes to return to the Tipsy Yeti, but only *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the restaurant until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq.*)**

30. Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 29, above, and incorporates them here by reference as if separately repled hereafter.

31. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

32. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

33. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

34.  The Tipsy Yeti is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(B).

35.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

36.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

37.    Defendant has a policy and practice of denying access to patrons of the Tipsy Yeti with service animals. The Defendant's decision to require an ID for service dogs and segregate disabled patrons of the restaurant who use service dogs from other patrons contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements:

> **Q17. Does the ADA require that service animals be certified as service animals?**
>
> A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.
>
> **There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

38. On information and belief, as of the date of Plaintiff's most recent visit to the Tipsy Yeti on or about February 13, 2026, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

39. In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of

10

discrimination faced day-to-day by people with disabilities. 42 U.S.C. § 12101(b).

40.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant." 42 U.S.C. § 12181(7)(B).

41.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

42.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

43. Defendant's actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing the Tipsy Yeti and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

44. Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title. On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

45. Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Tipsy Yeti, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

12

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
**PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

46.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 45 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

47.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

48.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

49.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

50.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

51.      The Tipsy Yeti is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

accommodation.

52.    Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based on Defendant's illegal prohibition of his legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he seek to return to these facilities.  Plaintiff cannot return to the Tipsy Yeti until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination daily since February 13, 2026, all to his statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

53.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of here which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

54.    Plaintiff wishes to return to patronize the Tipsy Yeti but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Tipsy Yeti and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

55.    The acts of Defendant has proximately caused and will continue to cause

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

56.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply immediately with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

57.     **DAMAGES:** Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize the Tipsy Yeti and will continue to cause him damages each day these barriers to access and policy barriers are still present.

58.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

59.     **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

60.     Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on his deterrence from returning to the Tipsy Yeti.

WHEREFORE, Plaintiff prays for relief as stated below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

61.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 60 of this Complaint and incorporates them herein as if separately re-pleaded.

62.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

16

63.     California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

64.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

65.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

66.     The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

67.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

section 1021.5 and other applicable law.

68.    Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

### PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendant as alleged herein, unless Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions on Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Brady Murphy prays for judgment and the following specific relief against Defendant:

1.    An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

b.   To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded should he desire to enter and use the services of the Tipsy Yeti;

c.   That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction under ADA section 12188(a) and state law directing Defendant to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

      d.  An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.     An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.     An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4.     An award of prejudgment interest under Civil Code § 3291;

5.     Interest on monetary awards as permitted by law; and

6.     Grant any other relief that this Court may deem just and proper.

Date: March 26, 2026                CLEFTON DISABILITY LAW

                                            */s/ Aaron M. Clefton*
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRADY MURPHY

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: March 26, 2026                CLEFTON DISABILITY LAW

                                            */s/ Aaron M. Clefton*
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRADY MURPHY

19